Dear Representative Jackson:
You have requested the opinion of this office on several issues relating to the billing process for entities that use the Johnny Gray Jones Youth Shelter ("Shelter"). Specifically you have asked what entity is responsible for paying the cost of housing juveniles at the Shelter who:
1) commit offenses not the subject of OYD; or
2) are otherwise in need of care of the shelter; and
 3) those juveniles who are domiciled in Caddo Parish or placed in the care of the Shelter by a Caddo Parish law enforcement official or a judge of the parish.
Additionally you have asked if the Shelter can refuse to take in and house juveniles when the placing agency refuses to pay for the juvenile's cost of care.
When addressing issues regarding a parish youth center it is important to look at LA. R.S. 15:1099, et al. These statutes create the power and authority of a youth center. According to the bylaws of the Shelter and the nature in which it operates, it is the opinion of this office that LA. R.S. 15:1099, et al, governs the operation of the Johnny Gray Jones Youth Shelter.
According to LA. R.S. 15:1099.4, there are two ways in which a Youth Shelter is created. After speaking with the director of the Shelter, Judy Welch, it is our opinion that the Shelter was created pursuant to LA. R.S. 15:1099.4(A), wherein Bossier Parish, through the Bossier Office of Community Services, provided the land and building for the Shelter. The Shelter also receives operating funds pursuant to LA. R.S. 27:93. Specifically this statute mandates that 5% of revenues collected from riverboat admission fees, in Bossier Parish, shall be allocated to the Johnny Gray Youth Shelter.
Your first issue inquires at to which entity is responsible for the cost of housing juveniles who have committed offenses not the subject of OYD (Office of Youth Development). According to LA. R.S. 36:401(C)(1): "[t]he Department of Public Safety and Corrections shall be composed of the executive office of the secretary, public safety services, corrections services" The statute goes on further to state that: "Corrections services shall include the office of youth development" Therefore the OYD is an office of the state of Louisiana. If the offenses of a juvenile are not the subject of this state agency, then your question implies these are juveniles being admitted under authority of Bossier Parish.
It is the opinion of this office that since Bossier Parish owns the land and the building housing the Shelter, operates the Shelter pursuant to LA R.S. 15:1099.3 and funds the Shelter pursuant to LA. R.S. 27:93, Bossier Parish cannot be billed for placing juveniles at the Shelter.
Your second issue deals with juveniles, not placed in the Shelter by a governing authority, but who are in need of the Shelter. According to LA. R.S. 15:1099.6, the Shelter shall be used for "the temporary detention of juveniles within the parish while awaiting trial or other disposition of their cases, runaways within the parish, and juveniles awaiting transfer to the Department of Public Safety and Corrections." Second among this list are runaways within Bossier Parish. The By-Laws of the Johnny Gray Jones Youth Shelter state that the objectives and purposes of the Shelter is "to provide to the youths of this parish a refuge when they have run afoul of the law, or when their personal safety demands it, or when it is for the betterment of the community." Therefore this question deals not with authorities placing offenders, but with the placement of "runaways within the parish" who are otherwise in need of care.
According to LA. R.S. 46:1907, the Department of Public Safety and Corrections is responsible for the temporary housing of runaways. The statute states that: "[w]ith respect to any child who has run away from home, the department [of Public Safety and Corrections] shall provide for the establishment, directly or through grants to or contracts with public or private agencies and organizations, of a coordinated, inclusive system under which: (1) Emergency temporary maintenance is provided for such child, and (2) The department, upon order of a court, conducts a prompt investigation reporting its findings of the home situation of such child to the court of proper jurisdiction." Therefore, runaways within Bossier Parish are provided "emergency temporary maintenance" by the state. The Shelter's cost of housing such juveniles is covered by its contract with the State. Specifically the contract dated July 1, 1998, as amended July 1, 2001, provides that the Shelter, at a fixed rate, allocate a certain number of beds for use by the Department of Public Safety and Corrections. Pursuant to the Shelter's bylaws and LA. R.S. 46:1907, runaway juveniles within Bossier Parish may be admitted into the Shelter and are paid for according to the terms and conditions of the contract with the Department of Public Safety and Corrections.
Finally, your third question asks whether or not Caddo Parish is responsible for the cost of housing Caddo Parish juveniles or juveniles placed with the Shelter by Caddo Parish authorities. The Shelter is not a state agency, nor is it funded solely by the State. As mentioned previously, the Shelter was built with parish funds and operates off a parish riverboat tax. The State's use of the Shelter is authorized by LA. R.S. 15:1092, which allows the State to contract with a "shelter care facility." The applicable portion of the statute reads: "[t]he Department of Public Safety and Corrections may enter into a contractual agreement with each regional detention facility, shelter care facility, or alternative shelter program" In this case the State does not own or operate the Shelter, but rather has contracted the services of the Shelter for a specific period of time, for a specific number of beds and at a specific rate per occupancy.
Caddo Parish authorities that are not acting pursuant to the State's contract with the Shelter, and without the State's power and authority, are responsible for the payment of services provided to them by the Shelter. Referring again to the statutes that govern regional youth shelters, LA. R.S. 15:1099.6 clearly states that: "[j]uveniles from outside of the parish may be accepted by the governing authority in accordance with rules and regulations adopted therefore by the governing authority and pursuant to a participation agreement between the governing authority and the governing authority of the participating parish, but only upon payment or agreement of the participating parish to pay the charge established for the sublease of space in the center and the fee for the care and maintenance of each juvenile." [Emphasis Added]. Under this statute entitled: "Use of youth center," it is clear that the Shelter "may" but is not required to accept juveniles. The Shelter has the authority to stop accepting juveniles from Caddo Parish until a participation agreement for payment of services is reached. Otherwise there would be a situation in which Bossier Parish and the State are paying for their services with the Shelter, but Caddo Parish, without authority from the State, would not.
We trust that this answers your inquiry.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ RICHARD L. McGIMSEY Assistant Attorney General
RPI/RLM/dam